UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAYSHELL S. JOHNSON,

                          Plaintiff,

v.                                                       5:20-CV-1055
                                                           (GTS/ML)
SYRACUSE POLICE DEP'T, and others;
SYRACUSE SHERIFF'S DEP'T; and
SYRACUSE CENTRAL BUS STATION,

                          Defendants.
_____

APPEARANCES:                                                       OF COUNSEL:

RAYSHELL S. JOHNSON
  Plaintiff, *Pro Se*
605 Carbon Street
Syracuse, New York 13208

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2), filed by Rayshell S. Johnson ("Plaintiff") to the Court for review. For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety with leave to amend.

**I.    BACKGROUND**

On September 8, 2020, Plaintiff commenced this action ("*Johnson IV*") by the filing of a verified Complaint (Dkt. No. 1), and three other civil actions: (1) *Johnson v. Syracuse Police*

*Dep't, et al.*, Civil Action No. 5:20-CV-1052 (MAD/TWD) ("*Johnson I*"); (2) *Johnson v. Tucker Missionary Baptist Church, et al.*, Civil Action No. 5:20-CV-1053 (DNH/ATB) ("*Johnson II*"); and (3) *Johnson v. Syracuse Police Dep't, et al.*, Civil Action No. 5:20-CV-1054 (DNH/ML) ("*Johnson III*").

On October 14, 2020, United States District Judge David Hurd accepted and adopted the recommendation of United States Magistrate Judge Andrew Baxter and dismissed Plaintiff's complaint in *Johnson II* (1) without prejudice and without leave to amend against Tucker Missionary Baptist Church, its pastor, and its employees, and (2) without prejudice and with leave to amend, within thirty days, against the Syracuse Police Department and/or the Sheriff's Department. *Johnson v. Tucker Missionary Baptist Church*, 20-CV-1053, 2020 WL 6075818, at *1 (N.D.N.Y. Oct. 14, 2020) (Hurd, J.). Judge Baxter concluded that, with respect to Tucker Missionary Baptist Church, "[t]here is no indication that any of the church staff acted in 'joint activity' with the state[,] . . . [nor are there any allegations that] the church or it[]s employees acted under color of state law." *Johnson v. Tucker Missionary Baptist Church*, 20-CV-1053, 2020 WL 6083450, at *3 (N.D.N.Y. Sept. 15, 2020) (Baxter, M.J.). In addition, Judge Baxter concluded that while it is unclear whether Plaintiff intended to sue the Syracuse Police Department or the Onondaga County Sheriff's Department, "Plaintiff cannot sue either department as an entity" but could sue the municipality itself; however, the "conclusory allegations . . . failed to state a constitutional claim against the City of Syracuse, the County of Onondaga, or any individual officer working for either department." *Johnson v. Tucker Missionary Baptist Church*, 2020 WL 6083450, at *4. To date, Plaintiff has not filed an amended complaint in *Johnson II*. (*See generally*, *Johnson II* docket sheet.)

There appears to be significant overlap in the allegations set forth in the complaints of *Johnson I*, *Johnson II*, *Johnson III*, and *Johnson IV*.

Here, Plaintiff has filed a form-complaint pursuant to Title VII, 42 U.S.C. § 2000e-5, "for employment discrimination based on race, color, religion, sex or national origin" against the Syracuse Police Department, the Sheriff's Police Department,[1] and the Central Bus Station[2] ("Defendants"). (Dkt. No. 1 at ¶¶ 3-4.) Plaintiff alleges that she was discriminated against based on her race or color, religion, and sex (or sexual harassment), in that, she was retaliated against. (*Id*. at ¶¶ 6-7.) However, Plaintiff does not allege to have ever been employed by Defendants. (*See generally* Dkt. No. 1.)

Plaintiff's Complaint is difficult to decipher. (*Id.*) Plaintiff alleges, without specifying any dates or timeframe, that she made "several" complaints "yet nothing has taken place by Syr. Police Dept." (Dkt. No. 1 at ¶ 8.)

In what appears to be a separate grievance, again with no date or timeframe listed, Plaintiff alleges that she was "[p]hysically abused by Sheriff[']s Dept" and that while incarcerated at the Onondaga County Justice Center, she suffered mentally because she was not given soap, a towel, or a toothbrush. (*Id.*) Plaintiff alleges that at some point in time she was transferred from the Onondaga County Justice Center to Jamesville Correctional Facility, where

---

[1]      Although Plaintiff names the "Syracuse Sheriff's Department," the address that Plaintiff provided for this Defendant is that of the Onondaga County Sheriff's Department. (Dkt. No. 1 at ¶ 3[a].) Any reference in the Complaint (Dkt. No. 1) to "Syracuse Sheriff's Department" shall be deemed to refer to the "Onondaga County Sheriff's Department." As a result, the Clerk of the Court is directed to amend the caption to accordingly.

[2]      Although Plaintiff names "Central Bus Station" as a Defendant (Dkt. No. 1 at ¶ 3[b]), the address that she provides for this entity is that of the Central New York Regional Transportation Authority ("Centro"). Any reference in the Complaint (Dkt. No. 1) to "Central Bus Station" shall be deemed to refer to the "Central New York Regional Transportation Authority." As a result, the Clerk of the Court is directed to amend the caption to accordingly.

she was housed with a person who was a danger to themselves, and that "they w[]ere lying taking money." (*Id*. at ¶ 9.)[3]

In what appears to be a separate incident, again with no date provided, Plaintiff alleges, that while she "was on Central Bus" she "was attacked by a young man who stated [that she] step[ped] on his boot." (*Id*.)[4] Plaintiff alleges that, as a result of this incident, she was unable to use public transportation for a period of sixty-days. (*Id*.)

In what appears to be a separate incident, again with no date provided, Plaintiff alleges, that she had a conversation with an unknown male and attempted to "close out these issues with him. Yet [she] was told . . . [that] the City was in charge. Later to be informed [that she is] ban[ned] from [the] property." (*Id*.)

Plaintiff states that she feels like all her civil and constitutional rights "have been crossed," and she seeks "maximum rewards." (*Id*. at ¶ 15.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II.     PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $400, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

---

[3]   It is unclear whether "they" refers to the individual that Plaintiff was housed with or employees of Jamesville Correctional Facility.

[4]   Although paragraph 9 of the form-complaint is entitled "Causes of Action," Plaintiff has simply continued the facts of her Complaint in this section. The Complaint does not list any causes of action.

standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[5] After reviewing Plaintiff's amended *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[6]

### III.    LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

---

[5]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[6]    Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

5

shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed.  *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee).  "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*,

490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

### IV.  ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety.

#### A.  Title VII

To the extent that Plaintiff attempts to assert any claim pursuant to Title VII of the Civil Rights Act, as amended, I recommend that the Court dismiss those claims for two reasons.

First, individuals may bring Title VII claims in federal court only after filing a timely charge with the Equal Employment Opportunity Commission ("EEOC") and receiving an EEOC right-to-sue letter.  42 U.S.C. § 2000e-5(e), (f); *see Legnani vv. Alitalia v. Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under . . . Title VII . . ., a claimant may bring suit in federal court only if she has filed a timely complaint with the EEO and obtained a right-to-sue letter.").  "Administrative exhaustion is an essential element of Title VII's . . . statutory scheme, the purpose of which is to avoid unnecessary judicial action by the federal courts by '[giving] the administrative agency the opportunity to investigate, mediate, and take remedial action.'" *Johnson v. Xylem Inc.*, 19-CV-0130, 2020 WL 1963125, at *2 (W.D.N.Y. Apr. 16, 2020) (quoting *Stewart v. United States Immigration & Naturalization Serv.*, 762 F.2d 193, 198 (2d

7

Cir. 1985)). The Second Circuit has held that exhaustion "is a precondition to bringing a Title VII claim in federal court rather than a jurisdictional requirement." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (citation omitted).

Plaintiff left blank the portion of the form-complaint where she was to indicate that she "filed charges with the New York State Division on Human Rights, the New York City Commission on Human Rights or Equal Employment Opportunity Commission regarding the alleged discriminatory acts." (Dkt. No. 1 at ¶ 10.) Plaintiff also left blank the portion of the form-complaint where she was to indicate the date that she received "the Equal Employment Opportunity Commission['s] issued . . . Notice-of-Right-to-Sue letter." (Dkt. No. 1 at ¶ 11.) "Further, a right-to-sue letter is not attached to Plaintiff's Complaint. Accordingly, Plaintiff's Title VII . . . claims must be dismissed on the basis that the right-to-sue letter is a precondition to bringing [the] claims in federal court." *Xylem Inc.*, 2020 WL 1963125, at *2 (citing *Constantine v. U-Haul Int'l, Inc.*, 15-CV-1204, 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015) (D'Agostino, J.) (dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that she received an EEOC right-to-sue letter); *Parker v. Mack*, 09-CV-1049A, 2010 WL 11507368, at *3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claims were subject to dismissal where the plaintiff did not submit a copy of his EEOC right-to-sue letter)).

Second, Title VII provides that "[i]t shall be unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)) (A plaintiff asserting a

Title VII retaliation claim must allege facts showing that "(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action."). Plaintiff does not allege that she is or was an employee of Defendants. (Dkt. No. 1.) The Complaint also does not contain facts plausibly alleging that Plaintiff participated in a protected activity, that Plaintiff suffered any adverse employment action, or any causal connection between the adverse employment action and the protected activity. As a result, Plaintiff fails to state a claim upon which relief may be granted pursuant to Title VII. *Jones v. Thomas*, 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption.").

    **B.**    **Civil Rights Pursuant to 42 U.S.C. § 1983**

To the extent that Plaintiff intended to assert claims pursuant to 42 U.S.C. § 1983, I recommend that those claims also be dismissed.

        **1.**    **Claims against Defendants Syracuse Police Department and Onondaga County Sheriff's Department**

"'[D]epartments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot be sued.'" *Burris v. Nassau Cnty. District Attorney*, 14-CV-5540, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017) (quoting *Harris v. Nassau Cnty.*, 13-CV-4728, 2016 WL 3023265, at *12 (E.D.N.Y. May 24, 2016) (dismissing claims against the Nassau County Police Department because it is an administrative arm of the municipality of Nassau County); citing *Pooler v. Hempstead Police*

*Dep't*, 897 F. Supp. 2d 12, 21 (E.D.N.Y. 2012) (dismissing claims against Hempstead Police Department and holding that the Hempstead Police Department is an "administrative arm" of the Village of Hempstead)); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claims against Lynbrook Police Department); *Wilson v. City of New York*, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) ("The court also dismisses the claims against the New York City Police Department which cannot be sued independently because it is an agency of the City of New York")).

While Plaintiff could sue the municipalities—the City of Syracuse and Onondaga County—themselves, rather than one of their "departments," a municipality may only be named as a defendant in certain circumstances. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Monell*, 436 U.S. at 694; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Connick*, 563 U.S. at 61. However, municipal

liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*")). To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

The Complaint is overly vague and, with respect to Defendants Syracuse Police Department and Onondaga County Sheriff's Department, claims only that (1) Plaintiff has made unspecified "complaints" against the Syracuse Police Department, (2) on an unspecified date Plaintiff was "physically abused" by the Sheriff's Department, (3) during an unspecified time period, while incarcerated at the Onondaga County Justice Center, Plaintiff was not given soap, a towel, or a toothbrush, (4) during an unspecified time period, at Jamesville Correctional Facility, Plaintiff was housed with a person who was harmful to themselves and "they were lying taking money," and (5) on an unspecified date, Plaintiff had a conversation with an unnamed male, who informed her that she was banned from an unspecified property. (Dkt. No. 1.)

"[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972)). Plaintiff's conclusory allegations in this case have failed to state a constitutional claim against the City of Syracuse, the County of Onondaga, or any individual officer working for either department. *See Cusamano v.*

11

*Sobek*, 604 F. Supp. 2d 416, 488-89 (N.D.N.Y. 2009) (Suddaby, J.) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (dismissing the incarcerated plaintiff's claim that he was denied toilet paper and soap on "several occasions" because it is "not a denial of 'the minimal civilized measure of life's necessities.'"); *Davidson v. Murray*, 371 F. Supp. 2d 361, 372-73 (W.D.N.Y. 2005) (collecting cases) (dismissing as insufficient the incarcerated plaintiff's claims of occasional or temporary deprivations of personal hygiene items, without deprivation of a human need or other accompanying harm); *Thomas v. Smith*, 559 F. Supp. 223, 224 (W.D.N.Y. 1983) (holding that the incarcerated plaintiff's allegations that the defendants denied him deodorant, soap, shampoo, etc., do not "amount to deprivations of constitutional dimensions. There is no dispute that prison life is rigid and often harsh.").

As a result, I recommend dismissal of Plaintiff's Complaint against Defendants Syracuse Police Department and Onondaga County Sheriff's Department.

### 2. Claims Against Centro

"Centro is a public benefit corporation, N.Y. Pub. Auth. Law § 1328(a), and it is therefore considered a municipal entity for purposes of § 1983." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 489 (N.D.N.Y. 2017) (Hurd, J.) (citing *Byrd v. Metro Transit Auth.*, 15-CV-1364, 2015 WL 4546718, at *2 (E.D.N.Y. July 28, 2015) ("Public benefit corporations, such as the MTA, are municipal entities for the purpose of Section 1983.")). As a result, only when Centro, through the execution of its policies, actually deprives an individual of her constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

The Complaint only alleges that, on an unspecified date, while on a Centro bus, Plaintiff was "attacked by a young man" and was "later . . . given 60 days of not being able to use public transportation." (Dkt. No. 1 at ¶ 9.) Plaintiff does not allege any action or inaction taken by

Defendant Centro or any of its employees that allegedly violated her constitutional rights. Much like her claims against Defendants Syracuse Police Department and Onondaga County Sheriff's Department, these conclusory, vague allegations fail to state a constitutional claim against Centro or any of its employees.

As a result, I recommend dismissal of Plaintiff's Complaint against Defendant Centro.

## V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[7]

---

[7]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims against Defendants. However, I am unable to conclude with complete certainty that if permitted leave to amend the complaint, Plaintiff could not assert plausible claims pursuant to Title VII or other civil rights causes of action against Defendants. Accordingly, I recommend that leave to amend be granted.

If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket such that Defendant "Syracuse Sheriff's Dept." is changed to Defendant "Onondaga County Sheriff's Department;" and it is further

**ORDERED** that the Clerk of the Court is directed to amend the docket such that Defendant "Syracuse Central Bus Station" is changed to Defendant "Central New York Regional Transportation Authority;" and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1), for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN**

---

[8] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013);

Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: November  10 , 2020
         Binghamton, New York

*[Signature]*

Miroslav Lovric
U.S. Magistrate Judge